THE DUCEY LUMBER CO. v. JAMES M. LANE.

*Reasonable time—Implied tenancy—Cost of piling-room.*

1. The "reasonable time" during which a purchaser of lumber is entitled to leave it where it is piled, before removing it, is for the jury to determine, in view of the circumstances, where suit is brought for the use of the space occupied.

2. The purchaser of lumber becomes presumptively the tenant of the owner of the premises on which it is piled if he does not remove it within .a reasonable time and on being notified that he must take it away; and if such notice is accompanied by a statement that a specified rent will be charged for their occupancy, he is presumed to assent to the terms if he does not remove it.

3. A contract for the sale of lumber provided that a balance of payment was to be adjusted, "on basis of eight per cent. interest, *after thirty days from date*, on amount due either party hereto, *when lumber is tallied or inspected.* Said tally or inspection is to be made within thirty days from date by tallyman or inspector agreeable to both parties hereto, and each party standing one-half of the expense thereof; *all other expenses* from and after this date to be paid by the" purchaser. *Held*, that title passed by this memorandum of agreement; but whether it did or not, the expense of storage until the lumber should be removed fell upon the purchaser.

Error to Muskegon. (Russell, J.) Nov. 11.—Nov. 19.

ASSUMPSIT. Defendant brings error. Affirmed.

*N. A. Fletcher* and *Geo. P. Wanty* for appellant. Where the price of merchandise depends on its quantity the measuring of it is presumably a condition precedent to its transfer: *Lingham v. Eggleston* 27 Mich. 324; *Hatch v. Fowler* 28 Mich. 205; *Hahn v. Fredericks* 30 Mich. 223; *Wilkinson v. Holiday* 33 Mich. 386; *Grant v. Merchants' Bank* 35 Mich. 515; *Scotten v. Sutter* 37 Mich. 526; *Carpenter v. Graham* 42 Mich. 191; *Brewer v. Salt Ass'n* 47 Mich. 526; *Byles v. Colier* 54 Mich. 1; action for use and occupation will not lie except where a contract relation exists of landlord and tenant, by virtue of which an obligation exists to pay rent: *Dwight v. Cutler* 3 Mich. 566; *Hogsett v. Ellis* 17 Mich. 351; *Dalton v. Laudahn* 30 Mich. 349; *Wilmarth v. Palmer* 34 Mich. 347; *Marq. Hough. & Ont. R. R. v. Harlow* 37 Mich. 554; *Lockwood v. Thunder Bay River Boom Co.* 42 Mich. 538; *Central Mills v. Hart* 124 Mass. 123; *Leonard v. Kingman* 136 Mass. 123; *Wales v. Chase* 139 Mass. 538.

*Smith, Nims, Hoyt & Erwin* for appellee. Silence gives consent to terms imposed for continued occupation : *Hunt v. Bailey* 39 Mo. 257; *Roberts v. Hayward* 3 C. & P. 432.

CHAMPLIN, J. Plaintiffs are the owners of a saw-mill at North Muskegon, and also of docks upon which lumber manufactured at their mill is piled convenient for being shipped on board of vessels. During the sawing season of

1882 they manufactured and piled on their dock a quantity of pine lumber for Frank Wood and E. C. Misner & Co. In April, 1883, defendant entered into the following agreement for the purchase of this lumber, viz.:

"Memorandum of agreement made and entered into this 13th day of April, A. D. 1883, by and between E. C. Misner & Company and Frank Wood, parties of the first part, and James M. Lane, party of the second part, witnesseth: The first parties hereby agree to sell to second party all of their merchantable white pine lumber out of number one stock piles (lumber under ten feet in length only excepted,) manufactured in 1883 from logs marked 'Hill & Nice' and now piled on mill-docks of the Ducey Lumber Company of North Muskegon, Michigan, amounting to 1,275,000 feet, more or less. Terms of sale as follows, namely: Second party to pay cash, or bankable paper as good as cash, at rate of $15.50 per thousand feet for above lumber, on the docks where it now stands, and agrees to pay five thousand dollars on same on or before April 20th; the balance, more or less, to be adjusted on basis of eight per cent. interest, after thirty days from date, on amount due either party hereto, when lumber is tallied or inspected. Said tally or inspection to be made within thirty days from date by tallyman or inspector agreeable to both parties hereto, and each party standing one-half of the expense thereof; all other expenses from and after this date to be paid by the party of the second part. It is further agreed by both parties hereto that the second party is to take whatever mill culls there may be now piled in with said merchantable lumber, paying therefor in cash $5 (five dollars) per thousand feet. It being agreed however, that the second party only pays the aforesaid five thousand dollars on both of above sales previous to inspection or tally, the balance, one way or the other, being adjusted as heretofore stipulated. The interlineations, 'Out of No. 1 stock piles,' '5,' (before thousand, 1st page,) 'After 30 days,' 'Within 30 days from date,' '5,' (before thousand, 2d page,) having all been made previous to signing of within.

In witness whereof, the parties hereto have hereunto subscribed their hands and seals the day and year first above written. [In duplicate.]

Signed and sealed in presence of

|          | Witness: | FRANK WOOD. | [Seal.] |
|          |          | E. C. MISNER & Co., |  |
|          |          | By E. C. MISNER. | [Seal.] |
|          |          | JAMES M. LANE." | [Seal.] |

It may be remarked, in passing, that the statement in the memorandum that the lumber was manufactured in 1883 was a mistake, as the testimony of Mr. Misner, about which no question is made, was positive that the lumber was manufactured in 1882, and piled on plaintiff's dock.

On the 11th of May, 1883, plaintiff wrote and mailed to defendant the following letter, which defendant admitted to the witness Hofstra he had received, namely:

"*James M. Lane, Grand Rapids, Michigan*—DEAR SIR: We need piling room, and would like very much to have you move lumber piled on our dock. We will be obliged to charge twenty-five cents per thousand if not taken off the dock by June 25th, 1883, and twenty-five cents per thousand each month thereafter, for if not moved it will necessitate our piling back from water edge, and cause moving of lumber a second time. Hoping you will attend to this matter at once, we remain,

Very respectfully yours,<br>DUCEY LUMBER COMPANY,<br>Per HOFSTRA."

No answer was returned and no attention paid to this letter.

The first shipment of lumber by defendant was on the 25th of June, 1883, and proof was made of shipments after that date to October 31, 1883, aggregating 835,270 feet. This suit was commenced on the 1st day of March, 1884, at which time there was about 150,000 feet still remaining upon the dock.

The declaration is in assumpsit. The first count alleges that the defendant is indebted to plaintiffs in the sum of $1500 for dockage room, by the plaintiffs found and provided for, in and about the docking, storing and keeping certain lumber before then docked, piled and stored on certain docks of the said plaintiffs for said defendant, at his special instance and request; and being so indebted, the defendant, in consideration thereof, promised to pay the same on request. The second count alleges that the defendant promised to pay therefor what the plaintiffs reasonably deserved to have of the defendant for the docking, storage and keeping of the lumber on request, and avers that he reasonably deserved to

have $1500 therefor, whereof the defendant had notice. The declaration then alleges a request to pay, and defendant's refusal.

Before bringing suit, plaintiffs made out and presented to defendant a bill for such storage, wherein they charged him seventy-five cents for each thousand feet for each month from and after the 25th day of June, 1883, for the quantity remaining on their dock from time to time. It was proved that there was no custom prevailing for mill or dock owners to charge for the use of dock, or for storage of lumber thereon, and that this was the first instance when such charge had been made.

The lumber was manufactured by the plaintiffs in 1882, under an agreement with Woods and E. C. Misner & Co. that plaintiffs should do the sawing for $2.50 per thousand feet, and cross-pile the lumber upon their docks, for which they had received full payment. There was no agreement as to the length of time the lumber should remain upon the docks, or when it should be removed therefrom; neither was there any agreement between Woods, E. C. Misner & Co. and plaintiffs as to anything being paid for dockage or storage.

The object of cross-piling lumber is to facilitate seasoning, and thus render it of greater value in the market than green lumber, and the fact that it was cross-piled implies that the lumber is to remain upon the dock where piled a reasonable time to accomplish the purpose for which it was cross-piled. What that reasonable time is, the jury must determine under all the facts and circumstances of the case as disclosed by the evidence. The evidence showed that the space occupied by this lumber was required by the plaintiffs in their business, and that they were put to great inconvenience by reason of this lumber not being removed. It was plainly the duty of the owner of the lumber to remove the same from the dock after the reasonable time had expired in which it might remain for the purpose of seasoning, without any express contract requiring him to do so; and if he permits it to remain longer, and after notice by the owner of the dock

that if he does so he will charge him a certain price per thousand for dockage or storage, an assent on the part of the owner may be presumed to the terms proposed, founded on his duty to remove the lumber, and his silence and continued use of the dock for the purpose of storage. In *Ward v. Warner* 8 Mich. 508, it was stated that "where one has the clear right to the use and control of property, and permits its use by others, upon condition of payment therefor, when the condition is specific in terms the law will imply from the use by one having knowledge of the terms an assent to them, and a corresponding promise to pay." See also *Hogsett v. Ellis* 17 Mich. 367; *Dwight v. Cutler* 3 Mich. 566; *Dalton v. Laudahn* 30 Mich. 349.

The defendant asserted no adverse right to the use or occupancy of the dock, nor did he deny that plaintiff was entitled to compensation for such use. What he did claim was that he was not liable to pay for such use until he became the owner of the lumber, and that he did not become such owner until the lumber was inspected and tallied, which was not in fact done until it was loaded upon the vessels. We shall notice this claim further on.

Considering, for the present, the defendant as the owner of the lumber at the time the notice was served upon him, and that the reasonable time in which the lumber should have been removed had expired, his occupancy of the docks after the 25th of June would render him liable to pay at least what it was reasonably worth for such use after that time. The contract relation of landlord and tenant was implied from what transpired, and his assent to the very terms of the letter may be presumed by the jury from his acquiescence and occupancy after receiving the letter.

We also think that the title of the lumber was intended to pass by the memorandum of agreement. The inspection and tally was agreed to be made in thirty days. If, as defendant claims, the inspection was not to be made until the lumber was shipped, the conclusion would follow that the lumber was all to be removed within thirty days. There can be no doubt but that the possession and control of the lumber

passed at once to the defendant. He could ship it at his
pleasure. His vendors had no voice in saying when it should
be shipped. Nor is it a reasonable construction of the con-
tract that the lumber might be left upon the dock indefinite-
ly at the risk and expense of the vendors. So far as the
question under consideration is concerned, it is entirely
immaterial whether the memorandum vests the ownership of
the lumber in defendant or not, for by the express terms of
the agreement each party was to stand one-half of the ex-
pense of tallyman and inspector; all other expenses from
and after that date were to be paid by the defendant. The
expense of storage wss not only for the benefit of the defend-
ant, but by his agreement if expenses were after the date
thereof incurred for that purpose, he was to pay them.

We have considered the exceptions taken to the introduc-
tion of evidence upon the trial, and find no error therein.
The charge of the court was as favorable to the defendant as
the case would permit, and upon the whole record we are of
opinion that

The judgment should be affirmed ; and it is so ordered.

The other Justices concurred.