VHAY *v.* GIES.

DEEDS—CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE—EVI-
DENCE—SUFFICIENCY.

> On a bill by children of the grantor, after his death, to
> set aside certain deeds on the ground of mental incom-
> petency and undue influence, evidence of undue influence
> *held*, sufficient to justify the decree of the court below
> setting said deeds aside.

Appeal from Wayne; O'Brien (Patrick H.), J., pre-
siding. Submitted February 1, 1922. (Docket No.
19.) Decided June 5, 1922.

Bill by Arthur J. Vhay and another against Anna
Gies to set aside certain deeds. From a decree for
plaintiffs, defendant appeals. Affirmed.

*William Henry Gallagher,* for plaintiffs.

*Campbell, Dewey, Stanton & Bushnell,* for defend-
ant.

SHARPE, J. Plaintiffs are the children of John
Vhay, who died in Detroit in September, 1920, aged
about 75 years. This bill was filed by them to set
aside two deeds executed by him on August 24 and
August 30, 1920, respectively, conveying his home and
certain other real estate to the defendant, on the
grounds of the mental incompetency of and undue in-
fluence exercised over the grantor at the time of their
execution. The answer was a denial of the allega-
tions in the bill. By way of cross-bill the defendant
prayed that the title to the premises be quieted in her.
The trial court set aside the conveyances for the

reasons stated and dismissed the cross-bill. The defendant appeals.

We do not deem it necessary to consider the question of the grantor's mental competency as in our opinion the proofs support the finding of undue influence. Mr. Vhay purchased a home in Detroit in 1900, using therefor in part certain moneys in his possession as guardian of the plaintiffs. He and his wife occupied it until her death in 1910. The plaintiffs were then married and in homes of their own. Mr. Vhay continued in occupancy, renting a part of the residence to roomers and light housekeepers. Defendant and her mother and sister became tenants in 1914. The mother was an invalid. The sister Mary remained at home with her mother. The defendant had a retail dry goods store on Grand River avenue. Her influence over Mr. Vhay soon became noticeable. After the mother's death, Mr. Vhay occupied a room adjoining that used by the two sisters. Many of the neighbors were called as witnesses and testified to facts tending to show the influence exercised by the defendant over Mr. Vhay. There is testimony clearly establishing that his neighbors and others, including the parish priest, were refused admission to the house on several occasions during the last weeks of his illness. He had long been a sufferer from Bright's disease, and was greatly weakened in body if not in mind. In February, 1920, he made a will, by the terms of which substantially all of his property was left to the defendant, who was present at the time it was prepared by her attorney. Some time later, defendant had procured an attorney to prepare a power of attorney from him to her and after it was executed she said "it might be better to make a deed," that "wills could be broken," and Mr. Vhay assented. He was very ill at the time the deeds in question were executed. The defendant raised his head from the

pillow and supported him while he signed his name, saying to him, in substance, "You don't need to sign these papers unless you want to, but if you want to sign, this (referring to the blank line on the deeds) is the place to sign." An error was discovered in one of the deeds and another was brought for execution four days later. The attorney testified that when the first deed was executed she suggested selling out everything and further said,

"Never mind, father, we will be all right in a little while, and we will take that trip to California."

He further testified:

"Before the deed was signed, she said his children wouldn't come and see him, and in fact, she said that Mr. Vhay didn't want his children to come there, that she had instructions to keep them out of the house if they did come, and that was at the time the deeds were drawn. * * * There was never any occasion at all when he dissented from any proposal that she made or failed to comply with any suggestion that she made."

It appears that plaintiffs had demanded an accounting from their father for the moneys he had received as their guardian. Defendant insists that his action in making these deeds is thus explained. His relations to his children seem to have been friendly until defendant went to reside in his home. While much testimony was offered by defendant tending to prove his mental competency, we think there is little to rebut the proof of undue influence. By these deeds Mr. Vhay left himself practically penniless and a charge on the bounty of the defendant. We are impressed that the finding of the trial court, who saw and heard the witnesses, that these deeds—

"were signed and executed as a result of undue influence exerted upon him by the defendant in his weakened mental and physical condition,"

—was justified by the proofs submitted. See, *In re Rosa's Estate*, 210 Mich. 628; *Power* v. *Palmer*, 214 Mich. 551.

The decree is affirmed, with costs to plaintiffs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.